**GENERAL STAR INDEMNITY CO., a Connecticut corporation, Plaintiff,**

v.

**ELAN MOTORSPORTS TECHNOLOGIES, INC., a Delaware corporation, and G Force, LLC, a Georgia limited liability company, Defendants.**

No. CIV.A.2:04–CV–35–WCO.

United States District Court, N.D. Georgia, Gainesville Division.

Nov. 5, 2004.

J. David Hopkins, III, Lord Bissell & Brook, Atlanta, GA, for Plaintiff.

Jon Douglas Stewart, Stewart Melvin & Frost, Gainesville, GA, for Defendants.

### *ORDER*

O'KELLEY, Senior District Judge.

The captioned case is before the court for consideration of plaintiff's motion for partial summary judgment [13–1].

## I. Factual Background [1]

In January 1999, plaintiff General Star Indemnity Co., a Connecticut insurance company, agreed to insure a number of Indianapolis Racing League ("IRL") race-cars against damage sustained during on-track accidents. [Pl.'s Ex. A, Def. G Force LLC's Resp. to Pl.'s Req. for Admis. ("Defs.' Admis.") ¶ 1]. In connection with the IRL insurance program, plaintiff provided $400,000 cash to a Colorado limited liability corporation ("LLC") known as G Force LLC ("GFCO"), which sold spare parts and chassis to IRL racing teams. [*Id.* ¶ 2; FED. R. CIV. P. 30(b)(6) Dep. of G Force LLC ("GFGA's Dep.") at 217 & Ex. 5 ¶ 1]. Plaintiff's payment to GFCO was an inventory deposit designed to supply the company with immediate funds to purchase and provide, without delay, vehicle parts for insured racecars damaged during on-track accidents. [Pl.Ex. B, Pl.'s Compl.

---

1. The facts giving rise to this motion are taken directly from defendants' answer to plaintiff's complaint, interrogatory responses, and FED. R. CIV. P. 30(b)(6) deposition as compiled by plaintiff and are construed in the light most favorable to defendants.

("Compl.") ¶ 10; Pl.'s Ex. C, Defs.' Ans. ("Ans.") ¶ 10 (admitting) ]. GFCO agreed to return to plaintiff any balance remaining in the inventory deposit at the end of that year's racing season. [*Id.*].

At the end of the 1999 racing season, defendant Elan Motorsports Technologies ("EMT") acquired GFCO and its parent company, G Force Technologies, Ltd. [Compl. ¶ 12; Ans. ¶ 12 (admitting) ]. EMT owned at least twelve subsidiary companies that furnish various services within the automobile racing industry, including supplying chassis, engines, and support to several IRL racing teams. [Defs.' Admis. ¶¶ 4, 7; GFGA's Dep. at 217 & Ex. 5 ¶ 1].

Plaintiff complains that in October 1999, at the end of the racing season, EMT caused GFCO to cease supplying automotive racing chassis and spare parts to IRL teams and subsequently moved its operations to EMT's corporate headquarters in Braselton, Georgia. [GFGA's Dep. at 217, 226–28 & Ex. 5 ¶ 1]. GFCO, however, continued to exist as a Colorado LLC until November 1, 2000. [Def. Ex. 1]. Afterwards, in February 2001, EMT incorporated defendant G Force as a LLC in the state of Georgia ("GFGA") [2]. [GFGA's Dep. at 22; Def. Ex. 2]. GFGA conducted the same operations originally undertaken by GFCO, including the selling of spare parts and chassis to IRL teams. [GFGA's Dep. at 219 & Ex. 5]. Defendants, moreover, contend that any business purportedly carried out by GFGA prior to November 2000 was in fact conducted by GFCO on behalf of GFGA. [Defs.' Resp. to Pl. Statement of Material Facts at 2; Def. Ex. 2].

Plaintiff renewed its IRL program contract with defendant G Force LLC [3] in February 2000, restoring the balance of the inventory deposit to $400,000, with the same understanding and agreement that G Force LLC would return any remaining funds at the end of the racing season. [Defs.' Admis. ¶¶ 4, 7; Compl. ¶ 10; Ans. ¶ 10; GFGA's Dep. at 376]. The inventory deposit was not, however, depleted or diminished during 2000. As a result, plaintiff did not renew the IRL program contract for a third year and, in a letter dated March 15, 2001, requested G Force/GA to return its $400,000 inventory deposit. [Defs.' Admis. ¶ 9]. After repeated attempts at recovery, in November 2001, plaintiff, through counsel, formally demanded full reimbursement of the deposit. [*Id.* ¶ 10]. GFGA, at EMT's instruction, made a $50,000 payment to plaintiff ("installment payment") on November 15, 2001, leaving a balance owing and due of $350,000. [*Id.* ¶ 11]. Despite continued demands, plaintiff was unable to obtain further payments from defendants EMT and GFGA. [*Id.* ¶ 12].

On July 18, 2002, plaintiff filed suit against GFGA in this court, based on the belief that GFGA was the entity responsible for repayment of the inventory deposit *See General Star Indem. Co. v. G Force, LLC,* No. 2:02–CV–101–WCO (N.D.Ga. 2002). Plaintiff claimed that GFGA breached the parties' contract and convert-

---

**2.** Plaintiff claims that EMT did not incorporate GFGA as a Georgia limited liability corporation until March 23, 2001, eight days after plaintiff demanded return of its $400,000 inventory deposit. [GFGA's Dep. at 22]. Documents provided by defendants, however, show that GFGA was approved to operate as a limited liability corporation in the state by Secretary of State Cathy Cox on February 26, 2001. [Def. Ex. 2].

**3.** The court remains uncertain as to which entity plaintiff contracted with for the second year of its IRL program-GFCO or GFGA. For the purposes of this motion, however, the identity of the exact G Force LLC is unnecessary, as both were wholly owned EMT subsidiaries.

ed the $400,000 inventory deposit. [*Id.*]. GFGA subsequently accepted responsibility for the debt and offered to settle the dispute for $398,050. [Pl. Mem. in Supp. of its Mot. for Summ. J. ("Pl.'s Mem.") at 9]. Plaintiff accepted the offer, and, on April 24, 2003, the settlement was reduced to judgment by the court Thereafter, plaintiff conducted post-judgment discovery to identify GFGA assets with which to collect on the judgment. [*Id.*].

Plaintiff learned, however, that during its entire existence as a Georgia LLC, GFGA has been wholly owned by EMT as its sole shareholder.[4] [Def. Dep. Ex. 2 ¶ 16]. At all times, GFGA was insolvent, receiving no capitalization from EMT or its subsidiaries. [Compl. ¶ 22; Ans. ¶ 22 (admitting); GFGA's Dep. at 221]. EMT instead made loans to the company for operating costs, which GFGA accounted for as debt and was contractually obligated to repay. [*Id.*] Moreover, GFGA never had any officers, directors, or employees. [Compl. ¶¶ 24, 25; Ans. ¶¶ 24, 25 (admitting); GFGA's Dep. at 117]. Its entire business was instead conducted by EMT employees acting ostensibly on EMT's behalf and at EMT's Georgia offices. [*Id.* at 117–19].

In addition, plaintiff discovered that on February 28, 2002, GFGA ceased all operations. EMT[5] assumed ownership of GFGA's assets, including all bank account funds. [Compl. ¶ 32; Ans. ¶ 32 (admitting) ]. Because the 2002 IRL racing season was not over, EMT began to conduct GFGA's former business operations, providing spare parts and chassis sales to IRL racing teams. [Def. Dep. at 142, 146–48, 152–53 & Ex. 5 ¶ 8]. EMT additionally admits that, when GFGA ceased operations, "the only change was in what books the expenses were run through" and "the business of either manufacturing or selling chassis for IRL racing team vehicles" continued uninterrupted. [GFGA's Dep. at 146]. At the same time, EMT also assumed and paid GFGA debts, except for the company's debts to plaintiff and G Force Technologies, a wholly owned EMT subsidiary. [*Id.* at 152, 142]. EMT acknowledges that it paid all other GFGA debts in part to benefit EMT's business operations and to avoid damage to its reputation in the IRL. [*Id.* at 367–68].

Plaintiff now brings the current action before this court against defendants EMT and GFGA, seeking to recover from EMT the full amount of GFGA's $398,050 debt due and owed to plaintiff for more than three years. [Pl. Mem. at 2]. Plaintiff argues that EMT, as GFGA's parent, has grossly abused its subsidiary's corporate form and stripped it of all assets with which to satisfy the debt it admittedly owes plaintiff. [*Id.* at 1–2]. Plaintiff also claims that EMT has paid all debts to GFGA's unaffiliated creditors, excepting plaintiff, and should thus be equally liable for the remittal of its subsidiary's debt to plaintiff. [*Id.* at 2].

## II. Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

---

4. Defendants clarify that GFCO and GFGA were at all times solely owned by G Force Technologies, Ltd. [Def.'s Resp. to Pl.'s Motion for Summ. J. at 1–2). G Force Technologies, however, was also a wholly owned EMT subsidiary whose own assets and liabilities were eventually acquired by EMT. (Compl. ¶ 12; Ans. ¶ 12 (admitting)).

5. Defendants again clarify that the assets and liabilities of GFGA were assumed by EMT's subsidiary, EMT Racing Corp, and not EMT itself. (Def.'s Resp. at 2). EMT Racing Corp., however, was also a wholly owned EMT subsidiary whose own assets and liabilities were acquired three months later by EMT. [GFGA's Dep. at 44–45, 37, 87–88].

al fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is well settled that a court considering a motion for summary judgment must view the evidence in a light most favorable to the nonmoving party. *See Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). It is important to recognize, however, that this principle does not require the parties to concur on every factual point. Rule 56 "[b]y its very terms ... provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Consideration of a summary judgment motion does not lessen the burden on the nonmoving party. The nonmoving party still bears the burden of coming forth with sufficient evidence. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). However, it is important to note the difference "between direct evidence and inferences that may permissibly be drawn from that evidence. Where a nonmovant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility; thus, there is no legal issue for the court to decide." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996). On the other hand, "[a] court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Id.* at 743.

Adopting language from one of its sister circuits, the Eleventh Circuit stated:

If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. Inferences from the nonmoving party's "specific facts" as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law. This inquiry ensures that a "genuine" issue of material fact exists for the factfinder to resolve at trial.

*Id.* (citation omitted). "Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the nonmovant's claim rests." *Id.*

## III. Preliminary Matters

In the instant case, subject-matter jurisdiction over defendants is premised on diversity of citizenship between the parties. Pursuant to *Erie R.Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), "a federal court in a diversity action must apply the controlling substantive law of the state." *Cambridge Mut. Ins. Co. v. City of Claxton*, 720 F.2d 1230, 1232 (11th Cir.1983). Georgia law thus governs the resolution of the claims at issue in this action.

## IV. Analysis

Plaintiff moves for summary judgment based upon three independent arguments: (1) that EMT is the successor corporation to G Force LLC and therefore liable for

its debt to plaintiff; (2) that EMT is directly liable to plaintiff for its failure to return the inventory deposit fund; and (3) that EMT violated its fiduciary duties to plaintiff.

Plaintiff first argues that it is entitled to summary judgment because defendant EMT is the successor corporation to defendant GFGA and is therefore liable for its debts to plaintiff. EMT, on the other hand, argues that EMT Racing Corp. ("EMT Racing"), rather than EMT, acquired GFGA's assets and liabilities so that EMT is not accountable to plaintiff for GFGA's debts under the continuation theory.

■ Generally, "a corporation that purchases or otherwise acquires the assets of a second corporation does not assume the debts and liabilities of the second corporation." *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1456 (11th Cir. 1985) (construing Georgia law); *see also Baker's Carpet Gallery*, 942 F.Supp. at 1471; *Carswell v. National Exch. Bank of Augusta*, 165 Ga. 351, 357–58, 140 S.E. 755 (1927); *Howard v. APAC–Georgia, Inc.*, 192 Ga.App. 49, 51, 383 S.E.2d 617 (1989). The doctrine of successor liability, however, recognizes four traditional exceptions to this general rule, allowing a court to impose liability upon the successor corporation.[6] *See e.g., Bud Antle*, 758 F.2d at 1456; *Baker's Carpet Gallery*, 942 F.Supp. at 1471. One such exception exists when the successor corporation is a "mere continuation" of the selling corporation.

Plaintiffs argue that the new, consolidated EMT is merely a continuation of GFGA.[7] *Id.*

■ The "mere continuation" exception applies when the purchasing corporation is merely a continuation or reincarnation of the selling corporation. *See Bud Antle*, 758 F.2d at 1458 (citing *Armour–Dial, Inc. v. Alkar Eng'g Corp.*, 469 F.Supp. 1198, 1201 (D.Wis.1979)). In other words, "the purchasing corporation is merely a 'new hat' for the seller, with the same or similar management and ownership." *Bud Antle*, 758 F.2d at 1458. In determining whether one corporation is a continuation of another, the test is whether there is a continuation of the corporate entity of the seller and not whether there is a continuation of the seller's business operation. *Id.* Thus, "[t]he key element of a 'mere continuation' is a common identity of the officers, directors, and stockholders in the selling and purchasing corporations." *Id.*, 758 F.2d at 1459. Georgia law in particular applies the continuation theory where there is some identity of ownership. *Bullington v. Union Tool Corp.*, 254 Ga. 283, 284, 328 S.E.2d 726 (1985); *see also Pet Care Prof'l Center, Inc. v. Bell-South Adver. & Publ'g Corp.*, 219 Ga.App. 117, 464 S.E.2d 249 (1995) (holding that corporation succeeding partnership liable for debts of original partnership where corporation retained same assets, owners, and employees); *Davis v. Concord Commercial Corp.*, 209 Ga.App. 595, 434 S.E.2d 571 (1993) (finding that parent finance

---

6. Courts will hold the buying corporation liable for the seller's debts "if (1) the buyer expressly or impliedly agreed to assume such debts; or (2) the transaction amounts to a de facto merger of the buyer and seller; or (3) the buying corporation is a "mere continuation" of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts." *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1456 (11th Cir.1985) (construing Geor-

gia law); *see also Howard v. APAC–Georgia, Inc.*, 192 Ga.App. 49, 51, 383 S.E.2d 617 (1989).

7. Plaintiff has not alleged that any of the three remaining exceptions are applicable here, including (1) express or implied agreement to assume liability for all GFGA's debts; (2) the existence of a de facto merger between EMT and GFGA; or (3) fraud in the transaction so that EMT can avoid liability for its conduct.

company was mere continuation of wholly owned subsidiary where there existed substantial identity of ownership plus complete identity of objects, assets, shareholders, and directors).

Before discussing the merits of plaintiff's legal argument, the court must first address EMT's contention that a separate entity referred to as EMT Racing, not EMT, assumed the assets and liabilities of GFGA. (Defs.' Resp. at 2). The court finds that this statement belies the evidence presented in the record. EMT has failed to provide any objective evidence establishing that it was indeed EMT Racing that assumed G Force's assets, liabilities, and business. Instead, during deposition testimony on July 22, 2004, EMT's Comptroller Michael Gibson testified that EMT, and not EMT Racing, acquired GFGA, along with its assets and liabilities, and has continuously operated GFGA's former business to the present day. (Pl.'s Mem. at 11–13; GFGA's Dep. at 19–20). In addition, EMT Racing was merely another wholly owned EMT subsidiary. (Dep. at 44–45). EMT Racing's own assets, liabilities, and business were assumed by EMT in June 2002, only three months after EMT contends that GFGA's assets, liabilities, and business were transferred to EMT Racing. (GFGA's Dep. at 37, 45, 87–88).

■ The facts discussed above thus show that it was EMT who assumed GFGA's assets and liabilities and is the undisputed successor corporation of GFGA. EMT was GFGA's sole shareholder and thus possessed complete identity of ownership. In addition, GFGA never had any directors, officers, or employees. Its business was at all times conducted by EMT's employees and in EMT's office space. Upon assuming ownership of GFGA's assets, including all funds in its bank account, EMT was aware of GFGA's debt to plaintiff. EMT then began to con-duct the business formerly conducted by GFGA, with no interruption in manufacturing and sales, by providing spare parts and chassis to IRL racing teams. EMT further admits that, when GFGA ceased operations, "the only change was in what books the expenses were run through." EMT even continues to operate GFGA's former business activities to this day.

Because there was complete identity of ownership and virtual identity in management, the court believes that the requirements for a finding that the newly consolidated EMT entity is a mere continuation of GFGA are clearly met. *See Bud Antle,* 758 F.2d at 1457–58. Considering that finding, the court finds that it need not consider the remaining grounds for partial summary judgment raised by plaintiff.

## V. Conclusion

For the above reasons, plaintiff's motion for partial summary judgment against defendants EMT and G Force LLC is hereby **GRANTED** [13–1]. The clerk of the court is thus **DIRECTED** to enter judgment for $398,050, the amount of plaintiff's April 24, 2003 judgment against G Force LLC, together with postjudgment interest at an annual rate of 1.27 percent pursuant to 28 U.S.C. § 1961(a).