[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 23, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-11953
Non-Argument Calendar

_____

D. C. Docket No. 08-80685-CV-JIC

JANIS BLACKMON,

Plaintiff-Appellant,

versus

WAL-MART STORES EAST, L.P.,
d.b.a. Wal-Mart,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 23, 2009)

Before BARKETT, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

Janis Blackmon appeals an adverse summary judgment in favor of her

former employer, Wal-Mart, on her sexual harassment and retaliation claims under Title VII, 42 U.S.C. §§ 2000e-2(a), 3(a), and the Florida Civil Rights Act, Fla. Stat. § 760.10. On appeal, Blackmon argues that the district court erred in concluding that comments of a sexual nature made by a co-worker Manuel Pereiro, culminating in a single incident of physical touching, were not severe or pervasive enough to amount to a hostile work environment. Blackmon also challenges the district court's determination that Wal-Mart is not liable for any alleged hostile work environment because it took prompt remedial action upon learning of the harassment. Finally, Blackmon argues that she was unlawfully retaliated against and terminated for complaining about Pereiro's conduct and that Wal-Mart's justification for her termination, excessive absenteeism, was mere pretext.

I.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). "Summary judgment is appropriate only when the evidence before the court demonstrates that 'there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed.R.Civ.P. 56(c)). "There is no genuine issue of material fact if the nonmoving party fails to make a showing sufficient to establish

2

the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." Jones v. Gerwens, 874 F.2d 1534, 1538 (11th Cir. 1989). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996).

The Florida Civil Rights Act of 1992 ("FCRA") protects employees from gender discrimination in the workplace. Fla. Stat. § 760.10(1)(a). Because the FCRA is patterned after Title VII, "federal case law on Title VII applies to FCRA claims." Guess v. City of Miramar, 889 So.2d 840, 846 n.2 (Fla. 4th Dist. Ct. App. 2005). Under Title VII, a plaintiff can establish gender discrimination through sexual harassment by the creation of a hostile work environment, by showing:

> (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists.

Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1231 (11th Cir. 2006).

Whether harassing conduct is sufficiently severe or pervasive to alter the

3

terms and conditions of a plaintiff's employment includes an objective and a subjective component. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). The plaintiff must subjectively perceive the environment to be abusive, and the conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment. Id. at 21, 114 S.Ct. at 370. The U.S. Supreme Court has noted that "[w]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances," such as (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating; and (4) whether it unreasonably interfered with the employee's work performance. Id. at 23, 114 S.Ct. at 371.

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Faragher, 524 U.S. at 807. The employer is strictly liable for the hostile environment if the supervisor takes tangible employment action against the victim. See id. at 807. However, when an employee has established a claim for vicarious liability where no tangible employment action was taken, a defending employer may raise as an affirmative defense to liability or damages: "(a) that the employer exercised reasonable care to

4

prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. Finally, when the perpetrator of the harassment is merely a co-employee of the victim, the employer is liable only "if it knew or should have known of the harassing conduct but failed to take prompt remedial action." Miller, 277 F.3d at 1278. "When an employer has a clear and published policy that outlines the procedures an employee must follow to report suspected harassment and the complaining employee follows those procedures, actual notice is established." Watson v. Blue Circle, Inc., 324 F.3d 1252, 1259 (11th Cir. 2003).

We turn first to Wal-Mart's liability for Pereiro's conduct. In our view, the record is clear that Wal-Mart responded promptly to Blackmon's complaints regarding Pereiro's behavior.[1] Blackmon testified that between December 2005 and July 19, 2006, Pereiro approached her at her cash register and made harassing comments such as "Come on Janis, you are going to give in," and "Babe, I'm going to get what I want." Pereiro also stated four or five times "You know I want to screw you, don't you?" On July 19, 2006, Pereiro approached Blackmon's cash register to give her change. He came up behind her, with the bag of coins in his

---

[1] There is no dispute that Wal-Mart has in place a clear and published anti-harassment policy.

5

right hand and grabbed or cupped both of Blackmon's breasts. Both Wal-Mart's security camera and witnesses confirm that Pereiro touched Blackmon's breast but, because it appeared the two had engaged in horseplay before the touching, it was not clear whether the touching was an accident. It is undisputed, however, that Wal-Mart promptly investigated the incident, and Pereiro was fired on July 31, 2006, less than two weeks later. After he was terminated, Pereiro came back to the store on at least four occasions, during which he threatened Blackmon that she would be fired. When Blackmon complained to assistant manager Debbie Cole, Cole told Blackmon to walk away from her register when Pereiro came into the store.

Blackmon argues that Wal-Mart's remedial measures were inadequate because (1) Wal-Mart had actual notice of Pereiro's behavior before the July 19 incident and (2) Wal-Mart refused to ban Pereiro from the store after he was terminated. We disagree.

Although Blackmon did not report all of Pereiro's behavior to management, she did complain to Debbie Cole, an assistant manager designated by Wal-Mart to receive such complaints, each time Pereiro said "You know I want to screw you, don't you?". Blackmon does not dispute that Cole, in turn, reprimanded Pereiro

6

after each of Blackmon's complaints.[2]  Therefore, there is no genuine dispute as to the fact that Wal-Mart took prompt remedial action upon learning of the harassment.  It reprimanded Pereiro several times and, within two weeks of the touching incident, it terminated his employment.  Blackmon's argument that Wal-Mart should have banned Pereiro from the store is unavailing in light of these facts.  Wal-Mart's termination of Pereiro was a prompt and adequate remedy.

Having determined that Wal-Mart is not liable for Pereiro's conduct, we find it unnecessary to address the remaining elements of hostile work environment sexual harassment.  We affirm the district court's grant of summary judgment as to this issue.

II.

The FCRA, like Title VII, 42 U.S.C. § 2000e-3(a), includes a separate anti-retaliation provision, stating that:

> It is an unlawful employment practice for an employer . . . to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or

---

[2] Blackmon also apparently complained to a Customer Service Manager ("CSM") named Brenda about some of Pereiro's other conduct.  However, as the district court concluded, the evidence is clear that a CSM is not a supervisor and was not designated under Wal-Mart's anti-harassment policy to receive complaints.  Blackmon has made no argument on appeal challenging this determination and it is therefore waived.  We further note that Pereiro was a CSM and therefore the district court did not err in concluding that he also was not Blackmon's supervisor.

participated in any manner in an investigation, proceeding, or hearing under this section.

Fla. Stat. § 760.10(7). Federal case law on Title VII applies to FCRA retaliation claims. Guess, 889 So.2d at 846 n.2.

To establish a prima facie case of retaliation, Title VII requires the plaintiff to establish that: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal relation between the protected activity and the adverse action. Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008). "After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability." Id. Once the employer makes this showing, "the plaintiff has a full and fair opportunity to demonstrate that the [employer's] proffered reason was merely a pretext to mask discriminatory action." Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009).

To show pretext, the plaintiff must present evidence sufficient "to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse [action]." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). Conclusory allegations, without more, are insufficient to show pretext when extensive evidence supports the employer's

legitimate nonretaliatory reason. <u>Mayfield v. Patterson Pump Co.</u>, 101 F.3d 1371, 1376 (11th Cir. 1996). Instead, the plaintiff must meet the proffered reason "head on and rebut it." <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1030 (11th Cir. 2000).

Blackmon failed to provide any evidence that would indicate that Wal-Mart inconsistently applied its policies to her or otherwise retaliated against her for complaining about Pereiro. Wal-Mart has, in essence, a "four strikes" policy, pursuant to which an employee who commits an infraction one time receives an verbal "coaching" from a supervisor, twice, a written coaching, and three times, a coaching known as a "Decision-Day" coaching. Any fourth infraction committed after a Decision Day coaching results in termination.

It is undisputed that Blackmon was terminated for excessive absenteeism after a Decision-Day coaching. Blackmon argues that, pursuant to Wal-Mart policy, an employee must receive a warning before that employee may be terminated for poor attendance. This is an incorrect statement of Wal-Mart's policy. Rather, under Wal-Mart's rules, a coaching received—for any reason, including absenteeism—after a Decision-Day coaching results in termination. Thus, although Blackmon is correct that Wal-Mart does not terminate for excessive absenteeism alone, it is undisputed that Blackmon's excessive absenteeism occurred after three earlier infractions and a Decision-Day coaching. Thus,

Blackmon's termination was consistent with Wal-Mart's "four strikes" policy and she cannot demonstrate that Wal-Mart's justification was a pretext for retaliation.

**AFFIRMED.**