[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12547
Non-Argument Calendar
_____

D.C. Docket No. 2:16-cv-14072-RLR

VIOLA BRYANT,
as Personal Representative of the
Estate of Gregory Vaughn Hill, Jr.,

Plaintiff - Appellee,

versus

SHERIFF KEN MASCARA,
in his official Capacity as Sheriff of St. Lucie County,

Defendant,

CHRISTOPHER NEWMAN, an individual,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 24, 2018)

Before ED CARNES, Chief Judge, TJOFLAT, and NEWSOM, Circuit Judges.

PER CURIAM:

St. Lucie County Deputy Sheriff Christopher Newman shot and killed Gregory Vaughn Hill, Jr. while responding to a noise complaint at Hill's home. Viola Bryant, personal representative of Hill's estate, filed this suit under 28 U.S.C. § 1983 and related state laws against Newman and St. Lucie County Sheriff Ken Mascara. Newman brings this interlocutory appeal, contending that the district court erred when it denied his motion for summary judgment and found he is not entitled to qualified immunity.

I.

Because we are reviewing Newman's motion for summary judgment, we recite the facts in the light most favorable to Bryant, viewing the evidence and drawing all inferences in her favor. See Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013).

The afternoon that Hill died, St. Lucie County Deputies Newman and Edward Lopez responded to a noise complaint at Hill's home. Hill lived across the street from an elementary school, and school was still letting out when Newman and Lopez arrived. The deputies heard loud music coming from Hill's garage and knocked on the garage door. When no one responded, Newman knocked on the front door. He heard the music get louder and turned to see the garage door

opening.  Hill stood facing out of the garage with his left hand on the door and his right hand down.  Newman drew his gun, and as the garage door started to go down, fired four times toward Hill, tracking upward.  A SWAT team arrived, and when it went inside the garage, it confirmed that Hill was dead and found a gun in his back pocket.  He had been shot three times:  twice in the abdomen and once in the head.  Bryant's expert concluded that after sustaining the head wound, Hill would have been incapable of any motor function.

Bryant filed this case on behalf of Hill's Estate and brought a claim against Newman in his individual capacity under 28 U.S.C. § 1983 for violating Hill's Fourth Amendment right to be free from excessive force.[1]  Newman moved for summary judgment on the basis of qualified immunity.  The district court denied his motion because it found genuine issues of material fact in the record, including a genuine issue as to whether Hill was holding a gun during the incident.  This is Newman's appeal.

## II.

We review <u>de novo</u> the district court's denial of summary judgment on qualified immunity grounds.  <u>Morton v. Kirkwood</u>, 707 F.3d 1276, 1280 (11th Cir. 2013).  "Summary judgment is appropriate where there is no genuine issue as to

---

[1] Bryant brought a second claim against Newman under Florida law for battery resulting in wrongful death.  She also filed negligence and municipal liability claims against Mascara in his official capacity.  Those claims are not implicated by this appeal.

any material fact, and the moving party is entitled to judgment as a matter of law."

Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1242 (11th Cir. 2001).

The moving party bears the burden of showing the absence of a genuine issue of

material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553

(1986). The burden then shifts to the nonmoving party to "come forward with

specific facts showing that there is a genuine issue for trial." Matushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

To preclude summary judgment, the factual dispute must be both genuine

and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct.

2505, 2510 (1986). A dispute is genuine if there is evidence with "a real basis in

the record" that could lead a reasonable jury to return a verdict for the nonmoving

party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996).

And a fact is material if it "might affect the outcome of the suit under the

governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. At the summary

judgment stage, the district court should not "weigh the evidence and determine the

truth of the matter," but should determine only "whether there is a genuine issue

for trial." Id. at 249, 106 S. Ct. at 2511.

Newman argues that "the facts are not reasonably disputed," but Bryant cites

multiple factual disputes in the record, including whether Hill was holding a gun

4

when he opened the garage door.[2]  On that issue, Bryant submitted the testimony of Destiny Hill, Gregory Hill's nine-year-old daughter, who was sitting on a bench at the school across the street when the incident occurred.  She testified that she could see her father and that he had nothing in his hands when he was shot. Although Newman and Lopez testified that Hill was holding a gun during the incident, at the summary judgment stage we do not weigh contradictory evidence but accept Destiny Hill's testimony as true for present purposes.  See Mize, 93 F.3d at 742.

Newman asserts that "this standalone testimony of a young child is properly disregarded," suggesting that Destiny Hill's age makes her incompetent to testify. But age is not dispositive of competency.  See Fed. R. Evid. 601 ("Every person is competent to be a witness unless [the Federal Rules of Evidence] provide otherwise."); Wheeler v. United States, 159 U.S. 523, 524, 16 S. Ct. 93, 93 (1895) ("[T]here is no precise age which determines the question of competency."); United States v. Perez, 526 F.2d 859, 865 (5th Cir. 1976) (citations omitted) ("The ultimate test of competence of a young child is whether he has the requisite intelligence and mental capacity to understand, recall and narrate his impressions of an occurrence.").  Destiny Hill testified in her deposition that her answers were based on what she saw and remembered, that she understood the difference

---

[2] The parties discuss a number of other potential factual disputes.  Because we find the issue of whether Hill had a gun dispositive, we do not address those arguments.

5

between the truth and a lie, and that she knew she had an obligation to tell the truth. At this stage, that evidence is sufficient to show that Destiny Hill was competent to testify and that her testimony can be considered for summary judgment purposes. See Perez, 526 F.2d at 865.

Newman also asserts that Destiny Hill's testimony should be disregarded because it is contradicted by the physical evidence. But the physical evidence supports the inference that Hill was not holding a gun when Newman shot him. A gun was found in Hill's back pocket, not in his hand. Newman claims that Hill had time between the first shot and the final shot to place the gun in his pocket because the head wound (which made motor function impossible) occurred last. But that conclusion requires us to draw an inference in favor of Newman, which we will not do at the summary judgment stage. See Gilmore, 738 F.3d at 272. We conclude that there is a genuine dispute about whether Hill was holding a gun when he opened the garage door. See Mize, 93 F.3d at 742.

That dispute is also material because when settled in Bryant's favor, it shows that Newman is not entitled to qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation marks omitted). To receive qualified

6

immunity, the government official must "establish that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009). If he does, then the burden "shifts to the plaintiff to show that the grant of qualified immunity is inappropriate." Id.

Bryant does not contest that Newman was acting within the scope of his discretionary authority when he shot Hill, so she must show that qualified immunity is inappropriate to prevail. Id. Qualified immunity is inappropriate when two things are true. First, the facts, viewed in the light most favorable to Bryant, must establish a constitutional violation. Id. Second, the "illegality of the officer's actions must have been clearly established at the time of the incident." Id.

In determining whether Newman violated Hill's Fourth Amendment right to be free from excessive force, we apply an "objective reasonableness" standard to determine whether the use of force was excessive, judging "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Long v. Slaton, 508 F.3d 576, 580 (11th Cir. 2007). The "reasonable officer standard does not mean we give the challenged officer's self-serving testimony more weight" than the testimony of other witnesses or accept his subjective beliefs. Perez v. Suszczynski, 809 F.3d 1213, 1219–20 (11th Cir. 2016). Instead, we "reconstruct the event in the light most favorable to the non-moving party and

7

determine whether the officer's use of force was excessive under those circumstances." Wate v. Kubler, 839 F.3d 1012, 1020 (11th Cir. 2016).

To determine whether the force used was excessive, the court weighs "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871 (1989). Newman contends that he had probable cause to believe that Hill posed a threat of serious physical harm to the officers or others.

Newman did not have probable cause to believe that unless Hill was holding a gun or reaching for one. If Hill was not holding a gun, and the evidence construed in Bryant's favor indicates he was not, a reasonable officer would not have believed he posed a threat. Because a reasonable officer would not have shot Hill while he stood unarmed and non-threatening in his garage, Newman violated Hill's Fourth Amendment right to be free from excessive force. See Tennessee v. Garner, 471 U.S. 1, 11, 105 S. Ct. 1694, 1701 (1985) ("A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.").

And previous cases before the United States Supreme Court and this Court clearly established that the use of deadly force in those circumstances was unconstitutional. See Garner, 471 U.S. at 11, 105 S. Ct. at 1701 (holding that the use of deadly force is not justified when "the suspect poses no immediate threat to

the officer and no threat to others"); Morton, 707 F.3d at 1282 (holding that the officer's deadly force was excessive when he "shot an unarmed man in a stationary vehicle while having no reason to believe that the man would place anyone's safety in danger"); Mercado v. City of Orlando, 407 F.3d 1151, 1157–58 (11th Cir. 2005) (holding that the officer's deadly force was excessive when the suspect "was not committing a crime, resisting arrest, or posing an immediate threat to the officers").

Viewing the facts in the light most favorable to Bryant, as we must, Gilmore, 738 F.3d 272, we conclude that Newman violated "clearly established . . . constitutional rights of which a reasonable person would have known," see Vinyard, 311 F.3d at 1346. Because there are genuine issues of material fact about whether Newman is entitled to qualified immunity, the district court did not err by denying Newman's motion for summary judgment on that ground.

**AFFIRMED.**