**Marelys P. REED, Plaintiff,**

v.

**MORGAN DREXEN, INC., Defendant.**

**Case No. 13–61440–CIV.**

United States District Court,
S.D. Florida.

Signed April 4, 2014.

Donald A. Yarbrough, Fort Lauderdale, FL, for Plaintiff.

Aaron Stenzler Weiss, Avi Robert Kaufman, Carlton Fields Jorden Burt, P.A., Miami, FL, for Defendant.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

DONALD M. MIDDLEBROOKS, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion for Partial Summary Judgment (DE 22) and the Defendants Motion for Summary Judgment (DE 26). I have reviewed the Motions, the responses thereto, the record in this case, and am otherwise fully advised in the premises.

## I. BACKGROUND

Plaintiff ("Reed") is an individual and a citizen of the State of Florida. Defendant ("Drexen") is a corporation and a citizen of the State of Nevada. This case is brought pursuant to the Court's Federal Question jurisdiction under 28 U.S.C. § 1331. Drexen provides legal services to consumers, and it is undisputed that Drexen made 533 calls to cell phone number (954) 673–2257 ("2257") between June of 2010 and February of 2012 with the goal of selling Reed's spouse ("Mr. Reed") legal services. Reed herself never gave express consent to Drexen to call the cell phone which she states is hers. On July 3, 2013, Reed filed a one-count Complaint against Drexen alleging that the 533 calls were non-emergency telephone calls which used an automatic telephone dialing system or pre-recorded or artificial voice in violation of 47 U.S.C. § 227(b)(1)(A), a provision of the Telephone Consumer Protection Act ("TCPA").

### The Motions

The Parties both claim that summary judgment is appropriate. Plaintiff in her Motion seeks a declaration that each of Defendant's calls violated the TCPA because there is no dispute that Drexen placed the auto-dialed pre-recorded non-emergency calls (the "Calls") to Reed's cellular phone without her express con-

sent, and because those calls constitute a per se violation of the TCPA. Defendant, on the other hand, asserts that judgment should be entered in its favor because Mr. Reed was the intended recipient of the calls, and because he gave his express consent to the calls when he provided Drexen with the cellular phone number.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a district court's decision to grant summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of material fact is genuine where the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *See Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir.1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 919 (11th Cir.1993)). A district court's central inquiry when determining whether it should grant a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). After the parties have had adequate time to conduct discovery and a party files a motion for summary judgment, a district court must grant summary judgment against a party who fails to establish the existence of an element essential to his case that he bears the burden of proof on during trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of demonstrating to the court that the record does not contain any genuine issues of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). Whether a fact is material or not is a question that requires the moving party to defer to substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Pursuant to Rule 56, a moving party may accompany its motion for summary judgment with supporting affidavits; however, the movant is not required to file any affidavits. *See* Fed.R.Civ.P. 56(a)-(b). Although, a district court may not consider an unsworn statement when "determining the propriety of summary judgment." *Gordon v. Watson,* 622 F.2d 120, 123 (11th Cir.1980) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593–94 (11th Cir.1995) (per curiam) (internal citation and quotations omitted). In addition, the dispute must have a "real basis in the record" in order to constitute a genuine dispute of fact. *Pace v. Capobianco,* 283 F.3d 1275, 1278 (11th Cir.2002) (quoting *Mize,* 93 F.3d at 742) (internal quotations omitted). Thus, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1327 (11th Cir.2005).

While conclusions and unsupported facts alone are insufficient to oppose a summary judgment motion, a district court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995) (citing *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir.1994) (per curiam)). In order to demonstrate a genuine issue, the party opposing entry of summary judgment must establish sufficient evidence upon which a jury could reasonably rule in his favor; therefore, a mere "scintilla of evidence" alone is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. If the party opposing summary judgment produces any evidence, a district court must accept it as true and draw "all justifiable inferences" in his favor. *See id.* at 255, 106 S.Ct. at 2513.

## III. ANALYSIS

The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls. *Mims v. Arrow Fin. Servs., LLC*, —— U.S. ——, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012). The TCPA makes it "unlawful for any person within the United States ... to make a call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic dialing system ... to any telephone number assigned to a ... cellular telephone service ... for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A). The TCPA creates a private right of action for persons affected by violations of its provisions and authorizes an award of $500.00 in statutory damages for each violation and the possibility of treble damages. 47 U.S.C. § 227(b)(3).

To effectively state a claim under this provision, a plaintiff must establish that a defendant made any call using an automatic telephone dialing system to his or her cellular telephone for a non-emergency purpose. If a plaintiff establishes this, then the burden shifts to the Defendant to establish that it had the Plaintiff's express consent. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, 565 (2008). It is undisputed that Drexen made 533 calls to the 2273 phone number in this case. The first question then is whose phone is it.

As stated previously, Drexen's first argument asserts that judgment should be entered in its favor because Mr. Reed was the intended recipient of the calls, and because he gave his express consent to the calls when he provided Drexen with the cellular phone number in question, that is in dispute is whether or not Drexen has adequately established that it had Plaintiff's express consent. The Eleventh Circuit recently addressed Drexen's first argument, and held that a "called party" for purposes of this Section of the TCPA is the current subscriber. *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir.2014). Reed counters that she is and, at the time of the calls, was the "current subscriber."

In support of Reed's assertion that she is the "current subscriber," she presents her affidavit which reads:

I, Marelys P. Reed, declare under penalty of perjury, as provided for by the law of the United States ... that the following statements are true:

1. I am over 18 years of age and I have personal knowledge of the facts stated herein.

2. I am the Plaintiff in this lawsuit.

3. I am the regular user and carrier of a cellular telephone using number (954) 673–2257.

This is the sum total of Reed's evidence that she was, for purposes of the TCPA, the "called party." There are no documents from any cellular service providers evincing that this phone is utilized by Reed. Drexen, in its First Set of Interrogatories, asked Plaintiff whether she had "ever owned the cellular telephone number corresponding to the cellular telephone described in ... the complaint"? Plaintiff responded "no." (DE 26–1 at 3). In her Request for Admissions, Plaintiff admitted that her cellular service is in her husband's name and that it is paid for from their joint funds. Drexen noticed a deposition of Greg Reed for December 20, 2013, however after several attempts to serve Mr. Reed with the deposition subpoena, the process server was unable to get anyone to answer the door at Mr. Reed's home despite noticing that people were inside. Ultimately it became too late to timely serve Mr. Reed, and so Drexen issued a second subpoena which the process server was also unable to serve. Specifically, the process server's affidavit disclosed that he attempted service of the first subpoena seven separate times. Six times nobody answered his knock at the door even though on multiple times he observed people in the house, and one or two cars registered to Mr. Reed in the driveway. Additionally, the process server left his business cards on the porch at least twice, and upon his return to the home, he noticed that the cards were no longer on the porch. He received no phone calls in response to his leaving the cards. He attempted service of the second subpoena twice. His affidavit states his professional opinion that Mr. Reed was purposely avoiding service of process. Accordingly,

Mr. Reed's crucial testimony as to the ownership of the phone has been unavailable.

In contrast to Plaintiff's self-serving affidavit, Drexen provides the following evidence. Drexen provides law firms with a variety of services, including marketing management and intake of new clients. In conjunction with these services, Drexen served as advertising and intake assistant to the Florida law firm of Figueredo & Boutsis (the "Firm"). On June 3, 2010, Mr. Reed phoned Drexen in response to a debt resolution t.v. advertisement that Drexen had run on behalf of the Firm. (Wegman Dep. 13–14)[1]. Anthony Garcia is a data processing lead at Drexen. On June 3, 2010 at approximately, Mr. Garcia received a call from an individual identifying himself as Greg Reed. (DE 26–3; Aff. Anthony Garcia at ¶ 9); (Wegman Dep. 13–14). Specifically, he provided: his full name, Greg Reed; his address, 5400 Northeast 2nd Avenue, Ft. Lauderdale, FL 33334; and his phone number, 2257. Mr. Reed also requested, and was sent, information regarding the Firm from Drexen. (*Id.* at 22–23). After, his initial call, 533 auto-dial calls were initiated by Drexen to the phone number provided by Mr. Reed in an attempt to reach Mr. Reed. (*Id.* at 67–70).

I note that a Google reverse-telephone lookup reveals that this phone number is associated with "Gregory A. Reed—Trucking Company." The Gregory A. Reed—Trucking Company operated under US-DOT Number 2255087, which was assigned on December 12, 2011, and operated until November of 2013. Additionally, the google search reveals an undated automobile "for-sale" ad that states "call greg @ (954) 673–2257. I have 4 trucks .complete with extra motors and truck parts in back of

---

1. Laura Wegman, Esquire was deposed as Drexen's corporate representative.

box." [2] There is also a link to a "Lamonts Fast Food/Marels Reed" which is an importer of empty "C" tanks from the Turks & Caicos.[3] Spokeo lists the phone as belonging to a Greg A. Reed, Lamonts Barbecue, at the Plaintiff's home address.

I reiterate that the initial burden is on the Plaintiff to establish that she was called in violation of the TCPA. And while I believe that Plaintiff has failed to establish that she was the subscriber as a matter of law, this argument was not raised by Drexen, and so it is improper to rule on this issue at this time. Under Rule 56, the Parties are entitled to an opportunity to be heard on this.

After careful review, in light of the Eleventh Circuit's recent decision in *Osorio*, I have reconsidered my earlier determination that this case is appropriate for summary determination. Although I have grave concerns regarding Plaintiff's credibility and potential abuses of the judicial process, and although I question whether or not Plaintiff has properly brought this case, I am going to allow it to proceed to a jury.

*Credibility concerns:*

Reed's deposition was taken on December 20, 2013, and I find that it is wholly incredulous. As Reed answered "I don't know" or "I don't remember" to the vast majority of questions posed to her. For example, Reed testified in her deposition that her husband, Mr. Reed has never lived with her at her address, rather, he has lived in the Turks & Caicos for the entire period of their 15 year marriage (13–16), but that he is an American citizen. She did not remember the last time that Mr. Reed had been in Florida. (21). How-

ever, on July 25, 2013, five months before Reed's deposition, Mr. Reed incorporated Caribbean Equipment and Restaurant Supplies, Inc. Under Document Number P13000062420 with a principle address of 5400 NE 2nd Ave, Oakland Park 33334. Mr. Reed listed himself as the President of the Company, and also as its registered agent. He listed Reed as the Company's Vice President. He provided the same address of 5400 NE 2nd Ave in Oakland Park as his registered agent address for service of process.

The State of Florida's Business Corporation's Act, 607 FLA. STAT. § 607.0501 requires that any corporation conducting business in the State "shall have and continuously maintain in this state . . . a registered agent, who may be . . . an individual who resides in this state." Additionally, this Section provides that "[a] registered agent . . . on whom process may be served . . . shall . . . file a statement in writing with the Department of State . . . [which] shall state that the registered agent is familiar with, and accepts, the obligations of that position." *Id.* at 607.0501(3). Under Florida law, it is a third degree felony, pursuant to 817.155 of the Florida Statutes, to provide false information in a document submitted to the Department of State. Mr. Reed attested that all of the information provided in his corporate filing was true and acknowledged that he understood that submitting false information was a crime. *See* Document Number P1300006240. Additionally, I note that Mr. Reed filed at least three lawsuits between 2008 and 2011, and in each of these prior lawsuits, he attested that "Plaintiff Gregory A. Reed, is a natural person who resides in Broward County, Florida." *See* Case No. 08–CV–60185–ASG (DE 1 at ¶ 3);

---

2. Found at http://www.americanlisted.com/alabama_1/cars_2/1988–1990_box_trucks_montgomery_16105745.html.

3. This is the only reference to Reed that the reverse lookup identified. Found at http://www.paraer.com/corporations/lamonts-fast-foodmarels-reed. html.

Case No. 11–60343–JIC (DE 1 at ¶ 3); Case No. 11–62029–KAM (DE 1 at ¶ 3).[4] I am hard pressed to believe Plaintiffs testimony that her husband has been living in the Turks & Caicos for the last fifteen years.[5]

Reed also claimed that she did not know anything about the following: (1) attempts to serve her husband with the subpoena to appear for his deposition;[6] (2) her cars—there was "her car," a Ford Explorer, a "house car" which was a van, but she was not sure what type of van;[7] she "didn't know" if she had seen the process server's business cards. (p. 27). She did not remember if her son or daughter had mentioned to her that someone had come by the house. (p. 29). She did not remember when she had meet her husband. She did not remember being a plaintiff in a previous lawsuit. (p. 36).

Although Mr. Yarbrough has represented Reed or her husband in at least five lawsuits,: this one; *Reed v. Marykland Elco, Inc.*, Case No. 05–61100, a Fair Debt Collection Practices Act ("FDCPA") (involving this Plaintiff); *Gregory A. Reed v. Bay Area Credit Service, LLC*, Case No. 08–CV–60185–ASG (filed February 11, 2008);[8] *Gregory A. Reed v. Complete Collection Service of South Florida*, Case No. 11–60343–JIC (filed February 16, 2011);[9]

---

**4.** Plaintiff testified she knew nothing about any of these suits.

**5.** I also note that Mr. Yarbrough represented Mr. Reed in each of these suits, and specifically drafted Mr. Reed's residency assertion. Mr. Yarbrough was present and Reed's deposition, and the Court has concerns about his silence in the face of Reed's testimony.

**6.** (p. 23–24).

**7.** (p. 25–27). Additionally, in relation to her cars, she did not know whose name her car was registered in. She testified that when Mr. Reed was in the states, he would drive her car because he does not have a car at the house. (p. 27).

**8.** In this case, Mr. Reed sued Bay Area Credit Service, LLC under both the Federal and Florida Fair Debt Collection Practices Acts for failing to identify itself as a debt collector when leaving two separate messages on his phone. 15 U.S.C. § 1692d(6), (e)(11); 559.72 Fla. Stat. The phone messages were receive on two separate occasions February 1st and 5th of 2008. They stated:

> Hello. I am calling with an important message. This is not a sales call. Please call me back at 1–866–488–4299. That number again is 1–866–488–4299. When calling please reference the following number.

Mr. Reed filed suit six days after the second phone call, on February 11, 2008. I note that although Mr. Reed asserted a claim for this same behavior under: Fla. Stat. 559.72(9)

which prohibits attempting to collect a debt which the debt collector knows to be invalid or otherwise unenforceable; and § 559.72(7) which prohibits a debt collector from "willfully communicat[ing] with the debtor ... with such frequency as can be reasonably expected to harass the debtor," neither of these sections appears at all appropriate for the claim presented. The Federal Act provide for payment of the plaintiff's legal fees "in the case of any successful action to enforce" liability under the Act. *See* 15 U.S.C. 1692k.

**9.** In this case, Mr. Reed alleged that he received the following message on the voicemail at his brother's home on February 17, 2010 at 1:11 p.m.

> This is a message intended for Gregory Reed. If you are not Gregory Reed please hang up or disconnect. If you are Gregory Reed, please continue to listen to this message. There will now be a 3 second pause in this message. By continuing to listen to the message, you acknowledge that you are Gregory Reed. This is Macy Robinson calling from Complete Collection Service. This is an attempt to collect a debt and any information obtained will be used for that purpose. Please contact me regarding this important business matter at 954–221–5410. Have reference number 2111638 available when returning this call. Thank you for your time. Have a great day.

Mr. Reed filed suit within one year and alleged that the Company had left similar or identical messages on additional occasions.

*Gregory A. Reed v. Firstsource Financial solutions, LLC,* Case No. 11–62029–KAM (filed September 15, 2011)[10] (DE 1 at ¶ 3), Plaintiff testified that she could did not know about any of the law suits, nor could she remember whether Mr. Yarbrough had ever represented her or her husband before. (p. 36).

Reed stated that she was not employed, and could not remember the last time that she held a job. When asked who paid the bills at her house, she responded "my husband" (38:15–22). When asked where the money comes from to pay the bill, Reed responded "my husband" (*id.* 39:14). She answered "I don't know" to the question of where her husband got the money from— whether a job or savings. *Id.* However, later on she testified that she paid some bills by debit card and calling on the phone. (p. 39–41).

Assuming for the sake of argument that Plaintiff has or can establish that she is the "current subscriber," I believe that a brief outline of the consent issue after *Osorio* would be beneficial in proceeding to trial. The TCPA does not define "express intent." The FCC has been charged with the authority to make rules and regulations to implement the TCPA. *See* 47 U.S.C. § 227(b)(2). Pursuant to that au-

thority, the FCC has stated that: "any telephone subscriber who releases his or her number has, in effect, given express consent to be called by the entity to which the number was released." [11]

In response to the consent issue, Plaintiff makes three arguments: (1) that Drexen has misrepresented the law as it pertains to autodialed calls to cellular phones,. (2) that Mr. Reed only consented to manual calls, and (3) that the express consent exemption under the TCPA does not extend so far as to permit automated recorded calls. In other words, Plaintiff appears to argue that the express consent exemption does not apply to automated calls under 47 U.S.C. § 227(b)(1)(A)(iii); Mr. Reed consented only to getting manual calls, and so accordingly, each of Drexen's calls exceeded the consent given.[12]

*Misrepresentation of the law*

█ Plaintiff argues that Drexen incorrectly asserts that the FCC *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order 7 FCCR 8752, 8769 (the "1992 Order") held that "the mere provision of a cellular number to a caller acts as a consent to automated calls." (Mem. in Opp. ¶ 1). Specifically,

This time Mr. Reed alleged a claim under 15 U.S.C. 1692c(b) which prohibits communicating with a third-party regarding the collection of another's debt. This provision also provides for recovery of attorneys fees.

**10.** In this case, as with the Complete Collections Services matter, the debt collector left multiple phone messages on Mr. Reed's brother's residential answering machine. As done previously, Mr. Reed sued under the FDCPA and the FFDCPA. This action is the only one from which the amount of judgment is on the record. Mr. Reed obtained $1,000.00 and his attorney, $1,477 in legal fees and an additional $390 in costs.

**11.** The Court notes that the FTC amended its Rules in 2012 to require that express consent

be set forth in writing. The calls at issue in this case, however, occurred before such amendment, and the Court accordingly applies pre-amendment consent analysis to the facts presented here.

**12.** Also troubling is the lack of any evidence that Plaintiff requested that Drexen cease calling the cell phone at issue herein. Taken together with the multiple consumer cases filed by Plaintiff and her husband, the Court is left with the uneasy impression that statutes legitimately designed to protect otherwise vulnerable consumers from harassing sales or debt collection practices, are being used by established debtors for pecuniary gain.

Plaintiff asserts that the 1992 Order only governs manually dialed calls not automated calls. The 1992 Order provides that "under the prohibitions set forth in § 227(b)(1) and in §§ 64.1200(a)-(d) of our rules, only calls placed by automatic telephone dialing systems or using an artificial or prerecorded voice are prohibited. If a call is otherwise subject to the prohibitions of § 64.1200, persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." Section 227(b)(1)(A)(iii) prohibits the making of "any call (other than a call made for emergency purposes or *made with the prior express consent of the called party* ) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any ... cellular telephone [number]." I find Plaintiff's argument that this prohibition applies only to manually dialed calls to be incorrect based on the plain language of the 1992 Order and Section 227(b)(1)(A)(iii).

Plaintiff additionally claims that Drexen incorrectly argues that the FCC in *In re Rules and Regulations of Implementing the [TCPA]*, 23 F.C.C.R. 559, 564 (F.C.C. 2008) (the "2008 Order") held that the mere provision of a cellular number acts as a consent to automated calls. Specifically. Plaintiff asserts that the "2008 Order applies *only* to calls made to collect a debt." Drexen, in its Reply, clarified that it's reference to the 2008 Order was purely for example.

*Mr. Reed only consented to Manual Calls*

In her next argument, Plaintiff asserts that Mr. Reed only consented to be called manually. In other words, he never consented to receiving auto-dialed calls. The parties have stipulated that Drexen, during the relevant time period, did not have a policy of requesting specific permission to use an auto-dialing system to call back a party whom had called them for information. (*See* DE 20). Plaintiff provides a case from the Northern District of Illinois to support this argument. *See Thraser–Lyon v. CCS Comer, LLC*, 2012 U.S. Dist. LEXIS 125203, 7–8 (N.D.Ill. Sept. 4, 2012). The Court in *Thraser–Lyon,* held that consent as it relates to Section 227(b)(1)(A)(iii) requires specific consent to the use of automatic dialing and prerecorded messaging. *Thrasher–Lyon* is not binding on this Court.

As Eleventh Circuit recently addressed consent as it pertains to the TCPA in *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir.2014). In *Osorio,* the Plaintiff shared a cellular plan with his live-in girlfriend, Betancourt. Betancourt had purchased an insurance policy with State Farm and had also applied for a credit card through State Farm bank. Her insurance policy premiums were charged to the credit account. Betancourt eventually became delinquent on her credit account, and State Farm made auto-dialed calls to the cell phone that it had listed on Osario's account. The phone belonged to Betancourt. Although it did not have the express question discussed in *Thrasher–Lyon* before it, the Eleventh Circuit engaged in a thorough discussion of what constitutes consent under the TCPA, and it did not state that a party's consent must be to receiving auto-dialed, as opposed to manual calls. The holding in *Thrasher–Lyon* goes against the great weight of authority which has found that providing a cell phone number constitutes consent to be called, whether manually or by autodial. Accordingly, this line of argument will likely not be permitted at trial.

Reviewing this case thus far then, it has been established that Drexen made 533 calls to a cell phone which absent a valid

consent would constitute TCPA violations. The evidence that Plaintiff provides does not as a matter of law establish the ownership of the phone. Turning to the question of consent, for which Defendant bears the burden, I find that Drexen has adequately established that Mr. Reed called Drexen and provided the cell phone number, thus consenting to receiving calls from Drexen. After a party has met its burden under Rule 56(a), the burden of production sifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ.P. 56(c)(1)(A) and (B).

In her opposition to Drexen's summary Judgment Motion, Plaintiff now concedes that Mr. Reed gave Drexen his consent, but only for manual calls. I do note that Ms. Reed claimed to know nothing about Mr. Reed's consent in either her deposition or her deposition and interrogatory responses. Further, Plaintiff has not established by competent evidence that the phone in question is even hers.[13]

In sum, because it is undisputed that Drexen called a cell phone via ATDS, and because evidence establishes that Mr. Reed provided Drexen with his express consent to be so called, the question raised after *Osorio* is who was the "subscriber" of the phone, and who had authority to consent to its being called. These questions should be answered by a jury. Accordingly, It is hereby

---

13. Again this raises credibility questions.

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment (DE 22) and the Defendants Motion for Summary Judgment (DE 26) be and are hereby DENIED. This case shall proceed to trial at the Court's earliest convenience. Trial shall be set by separate notice.