[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-14983

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 8, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00104-CV-SPM-WCS

SALVATORE SECONDO,

Plaintiff-Appellant,

versus

LARRY CAMPBELL,
In his official capacity of Leon County Sheriff,
LARRY FOLSOM,
Deputy Sheriff,
DORIS MUELLER,
Deputy Sheriff,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(April 8, 2009)

Before BIRCH, HULL and FAY, Circuit Judges.

PER CURIAM:

Salvatore Secondo ("Secondo") appeals the district court's grant of summary judgment in favor of Larry Campbell ("Campbell"), sheriff of Leon County, Florida, and Larry Folsom ("Folsom") and Doris Mueller ("Mueller"), deputy Leon County sheriffs (collectively, "Appellees"). Secondo filed a four-count complaint against Campbell, Folsom and Mueller.[1] Although the district court granted summary judgment in favor of the Appellees on all four counts, Secondo appeals the court's decision on only two counts. In the first count ("Count One"), Secondo argues that the district court erred in granting summary judgment on his 42 U.S.C. § 1983 excessive force claim against Folsom and Mueller. Secondo contends that the court failed to consider direct evidence which showed a genuine issue as to a material fact, rendering summary judgment inappropriate. On the other count ("Count Three"), Secondo argues that Folsom and Mueller negligently performed their duties in effecting his arrest and that Campbell was negligent based on the theory of repondeat superior. We find no merit in Secondo's argument regarding Count Three. His first argument, however, demands closer scrutiny. After careful

---

[1] In the original complaint, Count One was a 42 U.S.C. § 1983 claim alleging, inter alia, excessive force, reckless indifference and unlawful taking. The second count was a state law assault claim against Folsom. Count Three was a state law negligence claim and the fourth count was another § 1983 claim alleging violation of Secondo's property rights and deprivation of his liberty.

2

consideration of the record evidence, we conclude that the judgment of the district

should be AFFIRMED.

## I. BACKGROUND

The facts of this case are straightforward.[2]  When viewed in the light most

favorable to Secondo, they reflect the following.  On 15 March 2003, Mueller and

Folsom were called to a residence because of a landlord/tenant dispute.  Darrell

Bates ("Bates") and Hillary Brock ("Brock") informed Mueller and Folsom that

they had been renting the residence in question from Secondo since October 2002

but could not gain entry to the property because the locks had been changed.  In an

attempt to verify Bates and Brock's claim, Mueller contacted the City Utilities

Department through the Sheriff's Office communications section and confirmed

that the utilities for the property were in Brock's name.

During the course of the conversation, Secondo arrived at the residence.

When asked by Folsom why he changed the locks, Secondo denied doing so.

Secondo also denied ever leasing the property to Bates and Brock.  A stand-off

ensued, with Secondo refusing to unlock the door to the property, even though he

---

[2] Our recitation of the factual background in this case is limited to those facts surrounding the issues on appeal, namely Counts One and Three of the original complaint. Because this appeal is from a grant of summary judgment, we take the best set of facts for Secondo and draw all inferences in his favor. See Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

had the key on his person.  After explaining the eviction process to Secondo, Folsom determined that Secondo was not going to unlock the residence.  Folsom then advised Bates and Brock "that they were within their rights to force their way in."  R1-15 at 4.  In response, Bates broke a window pane and gained entry into the residence.

Secondo became increasingly agitated as the scene developed.  He told Bates and Brock that he intended to post armed guards on the property in order to keep people out.  He called Bates and Brock "scumbags" and loudly declared his intent to "tear down the house" and "smash every window in the house."  R1-16 at 107, 118.  Shortly thereafter, Folsom placed Secondo under arrest for disorderly conduct.

During the arrest, Folsom instructed Secondo to place his hands behind his back in order to be handcuffed.  Secondo told Folsom that he had recently undergone shoulder surgery and was unable to place his hands behind his back.  Instead, Secondo offered to be handcuffed with his arms in front of him.  Folsom told Secondo to place his hands behind his back a second time.  When Secondo refused, Folsom proceeded to handcuff him with his hands behind his back and place him in the patrol car.  Secondo described the event in his deposition as follows.

4

And the next thing I know, I was being grabbed. My arm was twisted. Both my arms were twisted behind my back, pulled back in a very – in a forceful manner. Then my arms were kind of pushed up, at which point I felt pops in my shoulders, great discomfort in my shoulders. Cuffs were locked down on my wrists, and I felt a great deal of pain in my arms, looked down and saw my arms were swelling up. In fact, the wrists, both my wrists had swollen above the height of the handcuffs. And I was pleading to have the handcuffs removed from my wrists, to have me recuffed in the front of my body. And I was reeling in pain. . . . [Folsom put his hand] on my head, and with a pushing motion down and twisting, I was forced – pushed into the car, at which time, when I was pushed into the car, I felt tingling in my fingers, and I complained about excessive amounts of pain in my arms, that I was having a tingling sensation, and I kept complaining while I was in the back of the patrol car.

R1-17 at 137-38. After about five minutes, Secondo was removed from the patrol car and re-handcuffed with his hands in front of him. He was placed back in the patrol car and taken to the local jail. Secondo was released on bond the same day. He did not immediately seek medical attention but rather iced his shoulders and wrists at home and tried to relax.

In March 2007, Secondo sued the Appellees and claimed that he incurred approximately $300,000 worth of medical expenses as a result of their actions on 15 March 2003. The Appellees responded with a motion for summary judgment. Secondo's submission in opposition to the motion for summary judgment included an independent medical examination ("IME") conducted by Dr. Michael Rohan ("Rohan") on 14 November 2007. In his examination of Secondo, Rohan made the

5

following findings concerning Secondo's shoulders:

> Regarding the right shoulder, he has 90 degrees forward elevation, 20 degrees backward elevation, 80 degrees abduction, 20 degrees adduction, 20 degrees internal rotation and 20 degrees external rotation. He has multiple arthroscopic type surgery scars.
>
> The left shoulder demonstrates 90 degrees forward elevation, 20 degrees backward elevation, 90 degrees abduction, 20 adduction, 20 degrees internal rotation and 30 degrees external rotation. He has several prominent scars here suggestive of open surgery.

Id. at 5. Reviewing Secondo's medical history, Rohan noted that on 2 December 2002, Secondo "underwent arthroscopic decompression with debridement of a labral tear and arthroscopic Bankhart repair of the right shoulder." Id. at 6. Rohan's notes also revealed that on 13 October 2003, Secondo "underwent left shoulder arthroscopy" and that "[f]indings at that time were that of a Bankhart lesion and a partial thickness rotator cuff tear." Id. at 7. Although Rohan listed several additional operations on both Secondo's right and left shoulders, these operations appear to have resulted from injuries sustained by Secondo after the incident on 15 March 2003. Rohan concluded his examination with the following formulation:

> This man barely was recovering from right shoulder surgery when he was injured by law enforcement personnel by his description in putting him in a police car. In addition to the post operative right shoulder he also injured his left shoulder. Dr. Loeb has treated him surgically on many occasions and has rated him as having a 4% impairment on the right side and an 8% impairment on the left side. These impairment ratings are bonafide and I believe are directly

6

related to his injury as described by Mr. Secondo.

Id. at 7-8.

The district court granted the Appellees' motions for summary judgment.[3] Regarding Secondo's § 1983 excessive force claim, the court focused almost exclusively on the handcuffing and did not squarely address the manner in which Secondo was placed in the patrol car. The court determined that although Secondo was not resisting arrest, he "did appear to pose a threat to the safety of the officers and the tenants." R1-32 at 10. The court found that "the time that [Secondo] was subjected to the pain and discomfort was very limited . . . [and his] handcuffing involved de minimis force." Id. The court interpreted Rohan's IME as follows:

> After an examination of the affidavit of Dr. Michael Rohan that was submitted by [Secondo], it appears that many of [Secondo's] medical injuries were unrelated to the altercation with Deputy Folsom. Most injuries appear to be injuries resulting from prior shoulder surgeries and wrist injuries. These injuries are not all the result of any excessive force used by Deputy Folsom.

Id. at 11. The court concluded that a reasonable jury could not find for Secondo on

---

[3] The court also granted summary judgment for Campbell on Secondo's state law negligence claim but only after consideration of Secondo's motion to alter or amend the judgment. In his motion, Secondo conceded that his state law negligence claim was inapplicable to Folsom and Mueller by operation of Florida law, but maintained that Campbell remained a proper party. The district court agreed but nevertheless granted summary judgment on Count Three in favor of Campbell. The court's determination was predicated on a finding that Secondo's negligence claim failed on both the breach and causation elements. Whereas we agree with the district court's grant of summary judgment on Count Three, we do not adopt its reasoning.

7

the excessive force claim and so granted summary judgment for the Appellees without considering the application of qualified immunity. See id. at 11. Secondo now appeals the district court's grant of summary judgment in favor of Appellees on Count One and in favor of Campbell on Count Three to us.[4]

## II. DISCUSSION

A. Standard of Review

1. Excessive Force Argument

We review the district court's grant of a motion for summary judgment de novo and view all evidence and factual inferences in the light most favorable to the nonmoving party. Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1060 (11th Cir. 1994). The district court must enter an order of summary judgment when "there is no genuine issue as to any material fact." Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quotation marks and citation omitted). "For factual issues to be considered genuine, they must have a real basis in the record." Id. (quotation marks and citation omitted). We stress that when considering a motion for summary judgment, a district court may not "weigh conflicting evidence or . . . make credibility determinations." Id. We have held that "[w]here a non-movant presents direct evidence that creates a genuine issue of material fact,

---

[4] On appeal, Secondo also resurrects his state law negligence claims against Folsom and Mueller.

8

the only issue is one of credibility; thus, there is no legal issue for the court to decide." Id. That said, we also recognize that although "all inferences drawn from the evidence must be viewed in the light most favorable to the nonmoving party, . . . [a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are implausible." Id. at 742-43 (quotation marks and citation omitted). Moreover, "[w]e may affirm the district court's [grant of summary judgment] on any adequate ground, even if it is other than the one on which the court actually relied." Smith v. Allen, 502 F.3d 1255, 1280 (11th Cir. 2007) (quotation marks and citation omitted).

We analyze a § 1983 excessive force claim under the Fourth Amendment's objective reasonableness standard. See Davis, 451 F.3d at 767. Our precedent in this area has set out several guideposts which establish the boundaries of our inquiry. First, we have held that "[i]n order to determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2005) (quotation marks and citation omitted). We note that our inquiry in an excessive force case is an objective one. See id. at 1198 n.7. The relevant factors in our determination of reasonableness include: "the severity of the crime at issue, whether the suspect poses an immediate

9

threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 1198 (quotation marks and citation omitted). Second, we also consider "the need for the application of force," "the relationship between the need and the amount of force used," and "the extent of the injury inflicted." Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir. 1986) (citation omitted). Third, we note that "the application of de minimis force, without more, will not support a claim of excessive force." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) . Fourth, we have held that the extent of injury is not determinative, because "reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time." Lee, 284 F.3d at 1200 (quotation marks and citation omitted). Finally, we have noted that force is more likely to be unlawful if it occurs "after the arrest [has] been fully effected, the arrestee completely secured, and all danger vitiated," as opposed to force employed by an officer while in the process of securing a suspect. Id. at 1199-1200.

2. State Law Negligence Argument

Secondo's negligence argument requires us to apply Florida law. See 28 U.S.C. § 1652; Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1306-07 (11th Cir.

10

2002). The Florida courts have consistently and unambiguously held that "it is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort." City of Miami v. Sanders, 672 So. 2d 46, 48 (quotation marks omitted), review denied, 683 So. 2d 484 (Fla. 1996); see also Comm'r of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S. Ct. 1776, 1782 (1967) ("[A]n intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.") (quotation marks, citation, and alterations omitted). That said, "a separate negligence claim based upon a distinct act of negligence may be brought against a police officer in conjunction with a claim for excessive use of force, . . . [but] the negligence component must pertain to something other than the actual application of force during the course of arrest." Sanders, 672 So. 2d at 48 (citation omitted).

B. Analysis

Because the Florida courts have conclusively established that a cause of action for the negligent use of excessive force is an oxymoron, Secondo's state law negligence argument must fail. Although Secondo invites us to consider his placement in the patrol car as separate and distinct from Folsom's actions in

11

effecting his arrest, we must decline the invitation. We conclude that the force used in effecting an arrest is commonly understood to mean both the force required to handcuff an individual and the force required to place him or her into a patrol car. We also note that Secondo's proffered interpretation would have the perhaps unintended consequence of sapping his § 1983 excessive force argument of much of its force. Florida law dictates that "[i]f excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery."[5] Id. at 47. Accordingly, we conclude that the district court did not err in granting summary judgment on Secondo's state law negligence claim.

We now turn to Secondo's § 1983 excessive force argument. Secondo contends that Folsom used excessive force against him during his arrest, resulting in significant injury to both of his shoulders. Secondo's arrest did not involve a serious crime, he did not resist arrest, and he informed Folsom about his recent shoulder surgery (on his right shoulder) before being handcuffed. Secondo presented direct evidence in the form of his deposition and in the form of Rohan's IME. We find it notable that Secondo alleges not only aggravation of a preexisting injury to his right shoulder, but also a fresh injury to his left shoulder. We also

_____

[5] Because Secondo did not challenge the district court's determination regarding his assault claim, we deem that issue to have been abandoned. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam).

12

consider Secondo's argument that his injuries were caused, in part, by the action of being placed roughly in the back of the patrol car after being handcuffed.

When viewed in the light most favorable to Secondo, we are compelled to conclude that the evidence presented by Secondo and the reasonable inferences derived therefrom fail to meet the "objectively reasonable" test we must apply in this case. See Graham v. Conner, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989). "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 396, 109 S. Ct. at 1871-72. The use of only de minimis force, without more, will not support an excessive force claim. Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000). The extent of the injury is not determinative, because "reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition . . . unknown to the officer at the time." Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002) (quotation marks and citation omitted). We have also noted that force is more likely to be unlawful if it occurs after the suspect has been secured, arrested, and any danger vitiated, as opposed to force that occurred when the officer was securing the suspect. Id. at 1199-1200.

With that legal framework in mind, we cannot say that Folsom and

13

Mueller's actions in effectuating Secondo's arrest rose to the level of a constitutional violation. Although Secondo informed Folsom about his right-shoulder injury prior to being handcuffed, we have observed that "a police officer need not credit everything a suspect tells him . . . [and] [t]his idea is especially true when the officer is in the process of handcuffing a suspect." Rodriguez v. Farrell, 294 F.3d 1276, 1278 (11th Cir. 2002). We also find it notable that Folsom readjusted Secondo's handcuffs only five minutes after Secondo began to register his discomfort.

Moreover, although Secondo's arrest was for a relatively minor infraction and he did not resist arrest in any way, our view of the record evidence does not reveal any indication that Folsom handled Secondo in an objectively unreasonable manner. The action of handcuffing a suspect and placing him or her in a patrol car necessarily requires a certain degree of force. Although Secondo maintains that Folsom's use of force in both handcuffing him and in placing him in the patrol car was excessive, the record evidence offers no suggestion that Folsom proceeded any differently than a reasonable officer would under similar circumstances. Accordingly, under the first prong of the Saucier[6] analysis, we conclude that Secondo has failed to establish the constitutional violation of use of excessive

---

[6] See Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151 (2001); see also Pearson v. Callahan, __ U.S. __, 129 S. Ct. 808, 818 (2009).

force.

## III.  CONCLUSION

Secondo appeals the district court's grant of summary judgment in favor of the Appellees on his 42 U.S.C. § 1983 excessive force claim and his state law negligence claim.  We find no merit in Secondo's state law negligence argument and so AFFIRM the district court's grant of summary judgment.  We AFFIRM the court's grant of summary judgment in favor of the Appellees on the § 1983 claim because the officers' objectively reasonable conduct did not constitute excessive force and did not rise to the level of a constitutional violation.

**AFFIRMED.**