**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1680

JAMES RANDY SCHOONOVER,

Plaintiff – Appellant,

v.

CLAY COUNTY SHERIFF'S DEPARTMENT, a division of the Clay County Commission; CLAY COUNTY COMMISSION, a political division of Clay County, West Virginia; MICHAEL PATRICK MORRIS, a deputy sheriff of Clay County; JONATHAN HOLCOMB, a deputy sheriff of Clay County,

Defendants – Appellees.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  John T. Copenhaver, Jr., Senior District Judge.  (2:19-cv-00386)

Argued:  December 7, 2022                           Decided:  June 15, 2023

Before GREGORY, Chief Judge, NIEMEYER, Circuit Judge, and Patricia Tolliver GILES, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished opinion.  District Judge Giles wrote the opinion in which Chief Judge Gregory and Judge Niemeyer joined.

**ARGUED:**  John-Mark Atkinson, ATKINSON & FRAMPTON, PLLC, Charleston, West Virginia, for Appellant.  Drannon L. Adkins, PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC, Charleston, West Virginia, for Appellees.  **ON BRIEF:**  Wendy E. Greve,

PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC, Charleston, West Virginia, for Appellees.

————————

Unpublished opinions are not binding precedent in this circuit.

GILES, District Judge:

James Randy Schoonover brought this action under 42 U.S.C. § 1983 and state law, arguing, as relevant here, that two deputy sheriffs from the Clay County Sheriff's Department violated his Fourth Amendment right to be free from the use of excessive force. Specifically, Schoonover, whose left arm is amputated, alleged that the deputies used excessive force when they handcuffed his right wrist to his right ankle during his arrest for several minor traffic violations. The district court dismissed this claim, concluding that, while their conduct amounted to a constitutional violation, the deputies were entitled to qualified immunity. For the reasons that follow, we affirm the district court's judgment.

I.

The following facts are drawn from the Complaint. Appellant James Randy Schoonover is a sixty-five-year-old resident of Clay County, West Virginia. J.A. 7. On September 27, 2018, Schoonover began to experience chest pain and drove to his brother's house to ask for a ride to the hospital in Charleston. J.A. 8. Schoonover arrived at his brother's house, exited his car, and started walking up the driveway when Appellee Deputy Sheriff Michael Patrick Morris pulled into the driveway and turned on his vehicle's police lights.[1] *Id.* Morris requested Schoonover's license and registration and asked if he had

---

[1] According to a criminal complaint against Schoonover, Morris conducted a "routine traffic stop" based on an expired vehicle registration. J.A. 45. Morris ran Schoonover's vehicle registration through the Department of Motor Vehicles ("DMV"), which indicated that the license tags were stolen. *Id.* Morris also ran Schoonover's name and date of birth through the DMV, which revealed that his license was suspended for unpaid citations. *Id.*

3

insurance. J.A. 8, 45. Schoonover responded that he did not have the requested documents and did not have insurance. J.A. 8, 45. Schoonover stated that he was experiencing chest pain and needed an aspirin. J.A. 9. Morris responded that Schoonover could not get an aspirin right now and stated that he needed to "figure out what's going on here." *Id.* At that point, Schoonover's sister-in-law asked if she could give him an aspirin, which Morris allowed. *Id.* Schoonover went into the house and took an aspirin. *Id.* While inside the house, Schoonover also called a local magistrate, Magistrate Jeffery Boggs, to ask if he could stay after 4:00 p.m. in case Schoonover was going to be brought before him. *Id.* Schoonover exited the house and Morris asked who he had called. *Id.* When Schoonover responded, Morris told him that he would be arrested "because he called Magistrate Boggs." *Id.*

Appellee Deputy Sheriff Jonathan Holcomb, who had arrived on the scene by that point, arrested Schoonover, handcuffed his right wrist to his right ankle, and placed him in the back of Morris' vehicle. J.A. 9–10. Schoonover was handcuffed in this manner because he is missing his left arm, which was amputated prior to the events of this suit. J.A. 7. As he was being placed in the vehicle, Schoonover asked for another aspirin and Holcomb raised his arm as if preparing to strike Schoonover, and said: "Shut your mouth, old man, or I'll shut it for you." J.A. 10. Neither Morris nor Holcomb informed Schoonover of the reason for his arrest or read him his *Miranda* rights. *Id.* When they reached the courthouse, Holcomb took Schoonover out of the police vehicle and said to a group of young men standing outside the courthouse: "You see this criminal here? Be

4

good or you'll end up here." *Id.* Holcomb and Morris also told their supervisor that they should have made Schoonover "quack like Donald Duck" while he was handcuffed. *Id.*

Schoonover was charged with four criminal violations: (1) driving with a suspended or revoked license, (2) driving without proof of insurance, (3) improper vehicle registration, and (4) receiving or transferring stolen property. J.A. 44. Schoonover pleaded guilty to receiving or transferring stolen property, and the remaining charges against him were dismissed. J.A. 48, 50–53.

On May 15, 2019, Schoonover filed a complaint in the United States District Court for the Southern District of West Virginia against the Clay County Sheriff's Department, the Clay County Commission, Morris in his individual capacity, and Holcomb in his individual capacity. *See* J.A. 7. Schoonover alleged he suffered physical injuries to his back, ankle, and wrist because of the way Morris and Holcomb had handcuffed him and alleged claims of excessive force and cruel and unusual punishment under 42 U.S.C. § 1983, state constitutional violations, and negligence against all Defendants. J.A. 11–16. Defendants moved to dismiss all claims. J.A. 18.

On May 21, 2020, the district court granted Defendants' motion to dismiss. Regarding Schoonover's excessive force claim under section 1983, the district court concluded that Morris and Holcomb's actions constituted excessive force in violation of the Fourth Amendment's prohibition against unreasonable seizures. J.A. 99–101. The district court explained that "[h]andcuffing an elderly amputee wrist-to-ankle under these circumstances is so extreme that any reasonable officer on the scene should know that the conduct constituted the imposition of excessive force in violation of the Fourth

5

Amendment." J.A. 101. Nevertheless, the district court determined that Morris and Holcomb were entitled to qualified immunity because there was "no indication that the officers were or should have been on notice of a clearly established right not to handcuff one such as [Schoonover] in this way." J.A. 102.

Schoonover timely appealed the district court's dismissal of his Fourth Amendment claims of excessive force under 42 U.S.C. § 1983 against Morris and Holcomb. J.A. 120.

## II.

We review the district court's grant of a qualified immunity-based motion to dismiss *de novo*.[2] *Tobey v. Jones*, 706 F.3d 379, 385 (4th Cir. 2013) (citation omitted). We accept as true all of the factual allegations contained in Schoonover's Complaint and draw all reasonable inferences in his favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

---

[2] On appeal, Schoonover appears to cite to materials that were not part of the record before the district court, including the testimonies of Holcomb and Morris and the sheriff department's handcuffing policies. Because this Court is reviewing the district court's grant of a motion to dismiss—which "test[s] the sufficiency of a complaint"—we will not consider materials that arose for the first time in discovery. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *see also Fassett v. Delta Kappa Epsilon*, 807 F.2d 1150, 1165 (3d Cir. 1986) ("The only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court.").

III.

Schoonover argues that the district court erred by concluding that Morris and Holcomb were entitled to qualified immunity.[3]  Qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citations omitted); *see also Tobey*, 706 F.3d at 385. To determine whether an officer is entitled to qualified immunity, we must examine, in either order: "(1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation[.]" *Est. of Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020) (citation omitted), *as amended* (June 10, 2020); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (finding that courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").

Schoonover's "appeal is limited to the second prong of the qualified immunity analysis:  whether a reasonable officer would have known that his actions violated a clearly

---

[3] As a threshold matter, this Court finds that Schoonover did not waive his argument that Holcomb and Morris are not entitled to qualified immunity.  While Holcomb and Morris maintain that Schoonover did not argue before the district court that the right to not be handcuffed wrist-to-ankle is clearly established, they concede that Schoonover argued that the right to be free from the use of excessive force is a clearly established Fourth Amendment right.  Appellees' Resp. Br. at 3.  Because these are "variations of the same basic argument[,]" we conclude that Schoonover did not waive his argument that Holcomb and Morris are not entitled to qualified immunity. *United States v. Lavabit, LLC*, 749 F.3d 276, 288 (4th Cir. 2014).

established right." *Valladares v. Cordero*, 552 F.3d 384, 389 (4th Cir. 2009) (citation omitted). A right is "clearly established" if "the contours of the right [are] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Hill v. Crum*, 727 F.3d 312, 321–22 (4th Cir. 2013) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). Therefore, courts must examine "whether an official in the defendant's position knew or reasonably should have known that the action he took violated the constitutional rights of the plaintiff." *Id.* at 322 (citing *Wilson*, 526 U.S. at 614–15). However, "we do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues." *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992) (citations omitted). Thus, "in the light of pre-existing law the unlawfulness must be apparent." *Crum*, 727 F.3d at 322 (quoting *Wilson*, 526 U.S. at 615). Officials, however, "'can still be on notice that their conduct violates established law even in novel factual circumstances,' so long as the law provided 'fair warning' that their conduct was unconstitutional." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

There is no doubt that the broad legal principle governing this case—that citizens have a Fourth Amendment right to be free from unreasonable seizures accomplished by

8

excessive force—was clearly established at the time of Schoonover's arrest.[4] *See Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person."); *see also Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."). However, the Supreme Court has cautioned that this right, as articulated in *Graham*, is "cast at a high level of generality." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (citing *Graham*, 490 U.S. at 396). Thus, *Graham* "does not by itself 'create clearly established law outside "an obvious case."'" *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 186 (4th Cir. 2018) (quoting *White v. Pauly*, 580 U.S. 73, 80 (2017)). While Schoonover's right not to be unreasonably handcuffed is clearly implicated by his Fourth Amendment right to be free from unreasonable seizure, the Court finds that this seizure does not amount to "an obvious case" such that Holcomb and Morris were on

---

[4] Schoonover's arguments on appeal are limited to the application of excessive force during arrest under the Fourth Amendment. The Supreme Court has noted that there is an open question regarding "whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins" and that "[i]t is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–539 (1979)). However, Schoonover made no argument before the district court regarding excessive force used beyond the point of arrest, or regarding his right to be free from pretrial punishment under the Due Process Clause of the Fourteenth Amendment.

sufficient notice that their conduct—handcuffing Schoonover wrist-to-ankle—constituted an unreasonable seizure. *Id.*

In defining the right at issue in the present case, we consider the Supreme Court's admonition "not to define clearly established law at a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). Rather, we must "take care to define the right at an 'appropriate level of specificity[,]'" *Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) (quoting *Wilson*, 526 U.S. at 615), especially in the Fourth Amendment context, where "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts[,]" *Mullenix*, 577 U.S. at 12 (first alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *modified by Pearson*, 555 U.S. 223 (holding that the two-step inquiry for resolving qualified immunity claims may be taken in either order)).

The parties diverge in defining the constitutional right at issue here. Schoonover argues that non-threatening individuals have a clearly established right to have their known injuries considered by police officers during handcuffing.[5] Appellant's Op. Br. at 17–18. Appellees, on the other hand, argue that the district court correctly found that "the right not to be handcuffed wrist-to-ankle" is not clearly established. Appellees' Resp. Br. at 5. The

---

[5] In the statement of the issue presented for review in his Opening Brief, however, Schoonover states the issue differently: "whether Morris and Holcomb were on notice of a clearly established right not to handcuff the 65-year-old, amputee Schoonover from wrist to ankle." Appellant's Op. Br. at 1. As discussed below, this recitation of the right at issue is appropriately specific.

district court held that "handcuffing the plaintiff wrist-to-ankle under the circumstances in this case seems unreasonable, but there is no indication that the officers were or should have been on notice of a clearly established right not to handcuff one such as the plaintiff in this way." J.A. 102. We find that the district court's narrow recitation of the right at issue is defined "at an appropriate level of specificity." *Thompson*, 878 F.3d at 98. Accordingly, we must now determine whether Schoonover's right not to be handcuffed wrist-to-ankle was clearly established.

For a right to be clearly established, it must be grounded in "'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018)(quoting *al–Kidd*, 563 U.S. at 741–42); *see also Williams v. Strickland*, 917 F.3d 763, 769 (4th Cir. 2019). Cases of "controlling authority" are those handed down by the Supreme Court, this Court, and the "highest court of the state in which the case arose[.]" *Booker*, 855 F.3d at 538 (quoting *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004)). "We 'ordinarily' need not look any further than decisions from these courts." *Id.* (quoting *Owens*, 372 F.3d at 279). However, "when 'there are no such decisions from courts of controlling authority, we may look to "a consensus of cases of persuasive authority" from *other jurisdictions*, if such exists.'" *Id.* (emphasis in original) (quoting *Owens*, 372 F.3d at 279–80).

Schoonover does not cite to any binding precedent that "place[s] the . . . constitutional question beyond debate." *al–Kidd*, 563 U.S. at 741 (citations omitted). Thus, in the absence of controlling authority, this Court looks to whether there is a "robust consensus of persuasive authority," *Strickland*, 917 F.3d at 769 (quoting *Booker*, 855 F.3d

11

at 544), "that would have given the defendants 'fair warning that their conduct,' under the circumstances, was wrongful," *id.* (quoting *Williamson v. Stirling*, 912 F.3d 154, 187 (4th Cir. 2018)).  Schoonover argues that a handful of district and circuit court cases create this "robust consensus of persuasive authority." *Id.*  However, these cases do not clearly establish that Schoonover had a Fourth Amendment right to be free from being handcuffed wrist-to-ankle, such that Holcomb and Morris had fair warning that their specific conduct was unconstitutional.

Schoonover argues that *Walton v. City of Southfield*, 995 F.2d 1331 (6th Cir. 1993), and *Guite v. Wright*, 147 F.3d 747 (8th Cir. 1998), are factually similar to the instant matter and evidence a clearly established right for officers to take known injuries into account during handcuffing.[6]  In *Walton*, the plaintiff was arrested for driving with a suspended

---

[6] Schoonover also cites *Howard v. Dickerson*, 34 F.3d 978 (10th Cir. 1994), to show that the Tenth Circuit has established that an officer must consider known injuries when handcuffing a non-threatening individual.  The plaintiff in *Howard* had recently undergone surgery and was wearing a neck brace at the time of arrest, and advised the arresting officer that handcuffing her behind her back would cause injury.  *Id.* at 979.  However, the plaintiff in *Howard* alleged a claim of deliberate indifference to her known medical needs under the Fourteenth Amendment, not a claim of excessive force under the Fourth Amendment.  *Id.* at 979–80.  Thus, *Howard* is inapplicable here.

Schoonover also cites to other cases in the Sixth Circuit related to the use of excessive force during handcuffing.  *See Martin v. Heideman*, 106 F.3d 1308, 1313 (6th Cir. 1997) (finding that handcuffing an individual's wrists too tightly could form the basis of an excessive force claim and remanding for a retrial); *Kostrzewa v. City of Troy*, 247 F.3d 633, 641 (6th Cir. 2001) (reversing the district court's dismissal of the plaintiff's excessive force claim based on an "overly-tight application of handcuffs").  These cases establish that handcuffing an individual's wrists too tightly may be grounds for an excessive force claim, but they do not contribute to a robust consensus that there is a clearly established right to be free from being handcuffed as Schoonover was, wrist-to-ankle.

12

license and handcuffed behind her back. 995 F.2d at 1333–34. The plaintiff claimed that she "begged not to be handcuffed" due to a shoulder injury, while the officer claimed that the plaintiff "never told him why she did not want to be handcuffed, and only told him her shoulder was hurting when they were travelling to the station." *Id.* at 1342. The Sixth Circuit concluded that there was a genuine issue of material fact as to whether the officer used excessive force because there was a dispute over whether the officer knew that the plaintiff had an injured shoulder. *Id.* (finding that "[a]n excessive use of force claim could be premised on [the officer's] handcuffing [of the plaintiff] if he knew that she had an injured arm and if he believed that she posed no threat to him").

In *Guite*, a plain clothed officer and three uniformed officers arrived at the plaintiff's home to question his teenage son about a recent string of armed robberies. 147 F.3d at 749. The plaintiff, who was recovering from surgery on his left shoulder and was wearing his arm in a sling, told the officers to either produce an arrest warrant or leave his property. *Id.* at 749–50. In response, one officer "grabbed [the plaintiff's] wrist, pushed him backwards, and held him up against the open door inside the house." *Id.* at 750. The Eighth Circuit concluded that, although "not every push or shove violates the Fourth Amendment," there was a genuine issue of material fact as to whether the officer used excessive force because it was unclear "whether force was needed and whether such force was excessive under the circumstances." *Id.* (citations omitted).

However, the facts in *Walton* and *Guite* are distinct from those here in one key respect. In *Walton* and *Guite*, the officers were made aware (or there was a dispute over whether the officer was made aware) of the plaintiffs' preexisting physical injuries and

13

proceeded to handcuff the plaintiffs in a manner that was likely to exacerbate those injuries. Here, Appellees did not handcuff Schoonover in a manner likely to exacerbate a preexisting physical injury or condition. Although the condition of his left arm was clearly visible, Schoonover does not allege that he notified Appellees that he was experiencing pain or discomfort when he was handcuffed. Unlike the plaintiffs in *Walton* and *Guite*, Schoonover did not have a preexisting physical injury or condition that was clearly susceptible to aggravation or re-injury from handcuffing; indeed, Schoonover's alleged injuries do not appear to stem from the site of his amputation. Given his amputated left arm, Appellees could not secure Schoonover in a traditional manner and in their attempt to handcuff him, caused new injuries to Schoonover's back, ankle, and wrist. Thus, while *Walton* and *Guite* show there is some consensus around the right of arrestees to have their known, preexisting injuries considered during handcuffing, they do not constitute a "robust consensus of persuasive authority" that gave Appellees "fair warning that their conduct, under the circumstances, was wrongful[.]" *Strickland*, 917 F.3d at 769.

Finally, Schoonover cites to various out-of-circuit district court cases to further support his position that there is a clearly established right to have officers consider known injuries in their decision to handcuff a non-threatening individual.[7] However, as discussed

---

[7] *See Aceto v. Kachajian*, 240 F. Supp. 2d 121, 126 (D. Mass. 2003); *Eason v. Anoka–Hennepin E. Metro Narcotics & Violent Crimes Task Force*, No. 00–CV–311–PAM/SRN, 2002 WL 1303023, at *5 (D. Minn. June 6, 2002); *Caron v. Hester*, No. 00–CV–394–M, 2001 WL 1568761, at *6 (D.N.H. Nov. 13, 2001); *Ferguson v. Hall*, 33 F. Supp. 2d 608, 612 (E.D. Mich. 1999); *Pritzker v. City of Hudson*, 26 F. Supp. 2d 433, 444 (N.D.N.Y. 1998).

14

above, in the present case, this definition of the right at issue is incorrect. Moreover, the out-of-circuit district court cases cited by Schoonover are only of limited persuasive authority. *See Booker*, 855 F.3d at 545 (finding that "unanimity" among the Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and D.C. Circuits created a "robust consensus of persuasive authority," but noting that because "published district court opinions, like unpublished opinions from our Court, have no precedential value, it follows that we should not consider them [as persuasive authority]"); *see also Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("Many Courts of Appeals . . . decline to consider district court precedent when determining if constitutional rights are clearly established for purposes of qualified immunity.").

In any case, even if these district court cases were considered persuasive authority, they would still not form a "robust consensus" as other circuits have reached the conclusion opposite Schoonover's position: that police officers *are* entitled to qualified immunity after injuring an individual during handcuffing, even when the officer was aware of the individual's preexisting injury or complaints of pain or discomfort. *See, e.g.*, *Day v. Wooten*, 947 F.3d 453, 463 (7th Cir. 2020) (reversing the district court's denial of qualified immunity and finding no clearly established right "of an out-of-breath [and non-cooperative] arrestee to not have his hands cuffed behind his back after he complains of difficulty breathing"); *Jackson v. Lubelan*, 657 F. App'x 497, 502 (6th Cir. 2016) (holding that "handcuffing someone just tightly enough that an awkward arm placement or a minor lift causes an injury is not [a clearly established violation of the Fourth Amendment] . . . even when the suspect complains to the officers" (citation omitted)); *Royster v. Nichols*,

15

698 F.3d 681, 692 (8th Cir. 2012) (finding that handcuffing a cooperative individual with his hands behind his back after he informed the officer of a preexisting shoulder injury did not constitute excessive force); *Secondo v. Campbell*, 327 F. App'x 126, 132–33 (11th Cir. 2009) (same); *Morreale v. City of Cripple Creek*, No. 96-1220, 1997 WL 290976, at *5–6 (10th Cir. May 27, 1997) (unpublished table decision) (finding that handcuffing a non-threatening and cooperative individual with her hands behind her back, despite her stated shoulder injury, did not constitute excessive force).

In sum, the cases cited by Schoonover do not amount to a "robust consensus of persuasive authority" that gave Appellees fair warning that their conduct was unconstitutional. While Appellees' actions appear inappropriate and callous in hindsight, we conclude that Schoonover's right not to be handcuffed in the manner that he was—wrist-to-ankle—was not clearly established, and Morris and Holcomb are entitled to qualified immunity.

## IV.

For the reasons set forth in this opinion, we affirm the district court's order granting Appellees' motion to dismiss.

*AFFIRMED*